# EXHIBIT A

RECEIVED JUL 2 3 2021 BY: Lourdes T.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 1 6 2021

BY NATHANIEL JOHNSON, DEPUTY

**NOTICE TO DEFENDANT:** ***(AVISO AL DEMANDADO):*** AG REDLANDS LLC dba HIGHLAND CARE CENTER OF REDLANDS, a California Skilled Nursing Facility; AG FACILITIES OPERATIONS, LLC, a Limited Liability Company; JACOB WINTNER, an individual; DOES 1-25, inclusive, Defendants, and MARLENE BATLLE, an individual, Nominal Defendant

**YOU ARE BEING SUED BY PLAINTIFF:** ***(LO ESTÁ DEMANDANDO EL DEMANDANTE):*** DIGNA BARREIRO, deceased, by and through her personal legal representative and successor in interest, DANIEL BATLLE; and DANIEL BATLLE, individually

**NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.**

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.**

***¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.***

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.***

**The name and address of the court is:** ***(El nombre y dirección de la corte es):*** San Bernardino Justice Center, 247 West Third Street, San Bernardino, CA 92415

**CASE NUMBER:** ***(Número del Caso):*** CIV SB 2 1 1 6 5 4 4

**The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:** ***(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):***
Christian R. Oliver, Esq. The Barnes Firm, LC, 655 W. Broadway, Suite 940, San Diego, CA 92101, (800)800-0000

**DATE:** ***(Fecha)*** JUN 1 6 2021 **Clerk, by** ***(Secretario)*** Nathaniel Johnson, **Deputy** ***(Adjunto)***

***(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)***
***(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).***

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [XX] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [ ] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation) [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

39

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
ALLEN R. OGHASSABIAN, SBN 292653
CHRISTIAN R. OLIVER, SBN 313192
THE BARNES FIRM, LC
655 W. BROADWAY, SUITE 940, SAN DIEGO, CA 92101
TELEPHONE NO.: (800) 800-0000 FAX NO. (Optional):
ATTORNEY FOR (Name): DIGNA BARRERO, deceased, by and through her personal legal representative and successor in interest, DANIEL BATLLE; and DANIEL BATLLE, individually.

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 04 2021

BY NATHANIEL JOHNSON, DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Bernardino
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Bernardino, CA 92415
BRANCH NAME: San Bernardino Justice Center

CASE NAME: DIGNA BARRERO, deceased, et al. vs. AG REDLANDS LLC et al.

# CIVIL CASE COVER SHEET

[X] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: CIVSB 2116544
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[X] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify)*: Four
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 4, 2021
Christian R. Oliver, Esq.
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

40

ALLEN R. OGHASSABIAN, SBN 292653
CHRISTIAN R. OLIVER, SBN 313192
THE BARNES FIRM, LC
655 W. Broadway, Ste 940
San Diego, California 92101
Tel: 800.800.0000 Fax: 888.800-7050
Email: allen.oghassabian@thebarnesfirm.com
Email: christian.oliver@thebarnesfirm.com

Attorneys for Plaintiffs

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 04 2021

BY NATHANIEL JOHNSON, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDIO

DIGNA BARREIRO, deceased, by and through her personal legal representative and successor in interest, DANIEL BATLLE; and DANIEL BATLLE, individually,

Plaintiffs,

v.

AG REDLANDS LLC dba HIGHLAND CARE CENTER OF REDLANDS, a California Skilled Nursing Facility; AG FACILITIES OPERATIONS, LLC, a Limited Liability Company; JACOB WINTNER, an individual; DOES 1-25, inclusive,

Defendants,

-and-

MARLENE BATLLE, an individual,

Nominal Defendant

Case No.: CIV SB 2116544

**COMPLAINT FOR DAMAGES:**

1. **Elder Abuse and Neglect (Welf. & Inst. Code, §15600, *et seq.)***
2. **Violation of Patient Rights (Health & Safety Code §1430(b))**
3. **Negligence**
4. **Wrongful Death**

All allegations set forth in this Complaint are based on information and belief except those allegations which pertain to Plaintiff(s) herein and their counsel. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

///

## THE PARTIES

1. Plaintiff Decedent DIGNA BARREIRO ("Decedent DIGNA") was born on September 14, 1941 and died on May 2, 2020.

2. Decedent DIGNA was a victim of elder abuse and at all times relevant herein, an "elder" or "dependent adult" as defined by Welfare & Institutions Code § 15610.23(b), and had physical limitations restricting her ability to carry out normal activities and protect her rights as discussed more fully *infra*.

3. At all times relevant to this action herein, Decedent DIGNA was a resident of the State of California and County of San Bernardino.

4. Plaintiff DANIEL BATLLE ("DANIEL") is an adult individual, the natural son of Decedent DIGNA, and he brings the survival claims of Elder Abuse and Neglect and Violation of Patient Rights on behalf of Decedent DIGNA, in his capacity as her personal legal representatives and Successor in Interest.

5. Filed concurrently herewith is DANIEL's Declaration pursuant to Code of Civil Procedure § 377.32.

6. DANIEL is the surviving child of Decedent DIGNA. He brings the Wrongful Death action in his individual capacity as Decedent DIGNA's heir.

7. At all times relevant to this action herein, DANIEL was a resident of the State of California and County of San Bernardino.

8. At all times relevant to this action herein, the Skilled Nursing Facility ("SNF") known as the HIGHLAND CARE CENTER OF REDLANDS was located at 700 E. Highland Avenue, Redlands, California, 92374.

9. Plaintiffs are informed and believe, and based upon information and belief allege, that Defendant AG REDLANDS LLC, Defendant AG FACILITIES OPERATIONS, LLC and Defendant JACOB WINTNER, were doing business as ("dba") HIGHLAND CARE CENTER OF REDLANDS ("Defendant FACILITY").

10. Plaintiffs are informed and believe, and based upon information and belief allege, that at all times relevant herein, Defendant AG REDLANDS LLC, Defendant AG FACILITIES OPERATIONS, LLC and Defendant JACOB WINTNER owned the Defendant FACILITY.

11. Plaintiffs are informed and believe, and based upon information and belief allege, that at all times relevant herein, Defendants operated the Defendant FACILITY.

12. Plaintiffs are informed and believe, and based upon information and belief allege, that at all times relevant herein, Defendant AG REDLANDS LLC (hereinafter "AG (THE LICENSEE)") was the Licensee for the Defendant FACILITY.

13. Plaintiffs are informed and believe, and based upon information and belief allege, that Defendant AG (THE LICENSEE), was at all times relevant herein, a California Limited Liability Company.

14. Plaintiffs are informed and believe, and based upon information and belief allege, that Defendant AG FACILITIES OPERATIONS, LLC was at all times relevant herein, a California Limited Liability Company.

15. Plaintiffs are informed and believe, and based upon information and belief allege, that Defendant JACOB WINTNER was at all times relevant herein, a resident of the State of California.

16. Plaintiffs are informed and believe, and based upon information and belief allege, that Defendant AG (THE LICENSEE)'s principal executive office is located at 6300 Wilshire Boulevard Suite 1800, Los Angeles, CA 90048.

17. The Nominal Defendants are Decedent DIGNA's heirs who, upon information and belief, have declined participating in the instant action and are named herein for service purposes only.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over the causes of action asserted pursuant to

California Code of Civil Procedure § 410.10.

19. The acts alleged in this complaint occurred in the County of San Bernardino.

20. The Defendants, and each of them, have sufficient minimum contacts in California based on conducting business in California or otherwise intentionally avail themselves of the California market though their provision of services in the County of San Bernardino, so as to render them essentially at home in California and making the exercise of jurisdiction by the California courts consistent with traditional notions of fair play and substantial justice.

21. Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 395 and 395.5 based on the facts, without limitation, that this Court is a court of competent jurisdiction, that at least one Defendant either resides or does business in the County of San Bernardino, and because the injuries to the persons complained of herein occurred in the County of San Bernardino.

## BACKGROUND ALLEGATIONS

22. Plaintiffs are informed and believe, and based upon information and belief allege, that a licensee is responsible for compliance with licensing requirements and the organization, management, operation, and control of the facility. The general duties of a licensee are set forth in Title 22 of the California Code of Regulations, § 72501. Certain duties are non-delegable including the responsibility for compliance with regulations and the management and control of the SNF. Delegation of authority by a licensee shall not diminish the responsibilities of the licensee. Therefore, even where a licensee delegates operational control to another person or entity, that licensee remains directly liable for management, operation, and control of the facility. (Cal. Code Regs., tit. 22, § 72501(a).)

23. Plaintiffs are informed and believe, and based upon information and belief allege, that Defendants dba the Defendant FACILITY were subject to the requirements of federal and state laws and regulations that govern the operation of a SNF in California. In

connection with its operation of the Defendant FACILITY, Defendants had a substantial and ongoing caretaking and custodial relationship involving ongoing responsibility for the basic needs of its residents, including Decedent DIGNA.

24. Plaintiffs are informed and believe, and based upon information and belief allege, by law, Defendant AG (THE LICENSEE) of SNFs operating in California must delegate to a designated administrator, in writing, the authority to organize and carry out the day-to-day functions of the SNF. During Decedent DIGNA'S admission to the Defendant FACILITY, the Defendant FACILITY had an Administrator who was responsible for the administration and management of the SNF in accordance with Title 22 of the California Code of Regulations § 72513. The Administrator was a managing agent of Defendant AG (THE LICENSEE) and had care or custody of Decedent DIGNA.

25. Plaintiffs are informed and believe, and based upon information and belief allege, Defendants, and each of them, had the duty to employ an adequate number of qualified personnel to carry out all of the functions of the SNF. (Health & Safety Code § 1599.1(a); Cal. Code Regs., tit. 22, § 72501, subd. (e)) Adequate staffing is essential to proper patient care and outcomes. There is no greater predictor of patient outcome in a skilled nursing facility than understaffing. The standard of care codified at 42 U.S.C. §§ 482.30 and 483.25 is to provide sufficient qualified nursing staff for nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments, and plans of care. Because these requirements are codified in state and federal regulations, everyone involved in nursing home operations, including the owners, operators, managers, administrators, and directors of nursing in this case, understands the direct relationship between quality staff and patient outcomes.

26. Plaintiffs are informed and believe, and based upon information and belief allege, in addition to Defendants' duty to have sufficient numbers of well-qualified and

trained staff, Defendants had a duty to ensure that the Defendant FACILITY was operated in a way that respected and did not violate well-recognized resident rights under California Code of Regulations, title 22; Health and Safety Code section 1599.1; 42 U.S.C. §§ 1395-1396; and 42 Code of Federal Regulations part 483.

27. Plaintiffs are informed and believe, and based upon information and belief allege, the Defendant FACILITY, Defendant AG REDLANDS LLC, Defendant AG FACILITIES OPERATIONS, LLC, and Defendant JACOB WINTNER were under common ownership and control.

28. Plaintiffs are informed and believe, and based upon information and belief allege, Defendant AG (THE LICENSEE), Defendant AG FACILITIES OPERATIONS, LLC and Defendant JACOB WINTNER were responsible for ensuring the Defendant FACILITY was operated in full compliance with federal and state laws and regulations governing operations of a SNF, and for all aspects of the organization, management, operation, and control of the Defendant FACILITY.

29. Plaintiffs are informed and believe, and based upon information and belief allege, Decedent DIGNA'S injuries arose out of the organization, management, operation and control of the Defendant FACILITY by Defendant AG (THE LICENSEE), Defendant AG FACILITIES OPERATIONS, LLC, Defendant JACOB WINTNER in their capacity as owner/operator of the Defendant FACILITY.

30. Plaintiffs are informed and believe, and based upon information and belief allege Defendants, each of them, share a joint responsibility for Decedent DIGNA's injuries and death.

31. Plaintiffs are informed and believe, and based upon information and belief allege, that at all times relevant herein, Defendants managed and controlled the Defendant FACILITY and made critical decisions regarding staffing budget and census, resulting in nurse staffing which fell below the legal minimum. Defendant AG (THE LICENSEE),

Defendant AG FACILITIES OPERATIONS, LLC and Defendant JACOB WINTNER benefited financially from the policies and procedures, decisions, control, and management of the Defendant FACILITY in the form of income and profits received from the Defendant FACILITY.

32. Plaintiffs are informed and believe, and based upon information and belief allege that if Defendant AG (THE LICENSEE), Defendant AG FACILITIES OPERATIONS, LLC, Defendant JACOB WINTNER and Defendant FACILITY are not treated as a single enterprise or alter-egos of each other, a severe injustice will result. Allowing Defendant AG (THE LICENSEE), Defendant AG FACILITIES OPERATIONS, LLC and Defendant JACOB WINTNER to avoid legal responsibility for actions taken at the Defendant FACILITY level, which they directed and caused, would be unfair and unjust.

33. Plaintiffs are informed and believe, and based upon information and belief allege, Defendants engaged in elder abuse and other wrongful conduct against Decedent DIGNA.

34. The true names and capacities, whether individual, corporate partnership, associate, or otherwise of Defendants named herein as DOES 1-25, inclusive, are unknown to Plaintiff, who therefore sue those Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and/or capacities and/or involvement of said fictitiously named Defendants when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to and thereby legally caused the injuries and damages herein alleged.

35. On information and belief, DOES 1 through 10 at all times mentioned herein owned, operated, managed, supervised, controlled, maintained, or were otherwise responsible for the business activities of Defendant FACILITY. Such DOES would include officers, directors, controlling shareholders, partners, and/or governing board members,

persons in *de facto* control of healthcare, operators, and/or employees of Defendant FACILITY. At all times relevant to this action, DOES 1 through 10 helped set and enforce policies and procedures for the services rendered to clients of Defendant FACILITY.

36. On information and belief, DOES 11 through 15 may be staff or contracted personnel of Defendant FACILITY, including physicians, licensed nurses, aides, social workers, business office personnel, and/or other clinical, or administrative personnel including, without limitation, persons directly or indirectly responsible for provision of patient care, persons having made representations or warranties to Plaintiffs, and/or persons acting in concert with other Defendants.

37. On information and belief, DOES 16 through 25 include persons directly or indirectly responsible for provision of care to Decedent DIGNA, including but not limited to physicians, medical groups, managed care organizations, acute care hospitals, home health agencies, visiting nurses, therapists, and/or other ancillary care providers who saw, examined, evaluated, observed and/or treated or failed to treat Decedent DIGNA leading to injury or death and/or persons having made representations or warranties to or from the Department of Social Services, the Department of Public Health, the Long Term Care Ombudsman, Adult Protective Services, Defendant FACILITY, and/or anyone purporting to act on behalf of or in concert with these persons or entities. The identities of such persons or entities are unknown to Plaintiff and Plaintiff will seek leave to amend when those identities are ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to and thereby legally caused the injuries and damages herein alleged.

38. Upon information and belief, Plaintiff further alleges that each Defendant and DOES 1-25 were the agent, servant, employee, joint venturer, and/or partner of each Co-Defendant, and at all times acted within the course and scope of said agency, employment,

venture, and/or partnership pursuant to the policies, practices, procedures, written or otherwise, and with the advance knowledge, acquiescence, or subsequent ratification of each Co-Defendant.

39. Upon information and belief, Plaintiff further alleges that each Defendant and DOES 1-25 are liable for the acts of each other through principals and/or respondent superior, agency, ostensible agency, partnership, alter-ego and/or other form(s) of vicarious liability. Consequently, each Defendant is jointly and severally liable to Plaintiffs for damages sustained as a proximate result of his, her, or their conduct.

40. Decedent DIGNA was admitted to Defendant FACILITY in 2017 for long-term rehabilitative care. She required skilled and custodial services to meet her care needs.

41. Decedent DIGNA had a history of Alzheimer's disease and Dementia. She also required assistance with ambulation and transfers. As a result of her physical and mental condition, she was dependent on others for her activities of daily living including, but not limited to, personal hygiene, continence care, transferring in and out of bed, eating, drinking, and managing her medication.

42. Defendants failed to properly assess and gather information to make decisions about suitable interventions to avoid individualized health risks. The care plan must set goals to provide benchmarks for evaluating whether the planned care interventions are effective. The staff must assess and reassess the resident to determine whether the care plan goals are being met. If the interventions are not working, the care plan must be modified to include alternative treatment interventions. If the resident has a change of condition, he or she must be reassessed to determine if the care plan needs to be modified as a result of the resident's new condition and/or baseline. Care planning is an ongoing interdisciplinary process that is critical to patient outcomes.

43. Decedent DIGNA suffered from dementia which limited her ability to eat or drink on her own. Defendants knew, or should have known, that elderly residents living

with dementia are at risk of dehydration and malnutrition. This is because a symptom of dementia includes impaired swallowing, or dysphagia. In dysphagic patients, dehydration and malnutrition are commonplace and often accelerated as a result of the patient's impaired ability to intake food and fluid. Treating dysphagia requires an interdisciplinary approach based on close monitoring of the hydration and nutritional status of the patient including the patient's intake and output of food and fluids. The patient's fluid status should be monitored in conjunction with the patient's dietary intake as fluid comes into the body through drinking, water in food, and water formed by oxidation of foods. The patient's urine color and amount should be assessed and if urine output is less than 30 ml/hour for two consecutive hours, this should be reported to the patient's family and physician. Close monitoring of vital signs such as blood pressure and heart rates for hypotension and tachycardia should be implemented. The patient's weight should be monitored as this is the best assessment data for possible fluid volume imbalance and/or malnutrition. If the patient is on psychotropic medications and benzodiazepines, this too should be monitored as these medications are known to increase the risk of dehydration in dysphagic patients.

44. Defendant FACILITY knew Decedent DIGNA was at an increased risk of dehydration, malnutrition and weight loss when she was admitted to their facility, and throughout her stay. However, Defendants failed to assess her, update her care plans regarding dehydration, provide her with assistance with feeding and drinking, and failed to monitor her for signs and symptoms of dehydration and malnutrition.

45. Decedent DIGNA required full assistance with personal hygiene and care. Yet the Defendants failed to provide the full assistance she required.

46. During Decedent DIGNA'S stay at Defendant FACILITY, her son, DANIEL visited 1-2 times per month check on his mother.

47. In March of 2020, Defendant FACILITY no longer allowed visitors in the facility.

48. On or around early May of 2020, it was reported that approximately 15 cases of COVID-19 had been confirmed among residents at Defendants' FACILITY. Defendant FACILITY employees began to fail to show up for work. Defendant FACILITY failed to provide required care to the facility's residents and placed them in harm's way.

49. In late April of 2020, Decedent DIGNA tested positive for COVID-19.

50. On April 24, 2020, Decedent DIGNA was transported to Redlands Community Hospital's Emergency Room due to pneumonia, malnutrition and pain to her side.

51. Over the next few days, Decedent DIGNA'S health continued to decline. She was diagnosed with acute respiratory failure, sepsis and pneumonia.

52. Unsurprisingly, Decedent DIGNA'S health continued to deteriorate. Decedent DIGNA could not recover from her extreme respiratory infection/syndrome and other injuries and died on May 2, 2020.

**FIRST CAUSE OF ACTION**

**ELDER ABUSE AND NEGLECT**

**[Welfare & Institution Code §§ 15600, et seq.]**

**(Against Defendants AG REDLANDS LLC dba HIGHLAND CARE CENTER OF REDLANDS, AG FACILITIES OPERATIONS, LLC, JACOB WINTNER, and DOES 1-25)**

53. Plaintiffs hereby incorporates by reference Paragraph 1 through 52 of this Complaint as though fully set forth herein.

54. Decedent DIGNA, at all times relevant herein, was over the age of 65 and thus an "elder" as that term is defined in Welfare and Institutions Code § 15610.27.

55. Decedent DIGNA was not able-bodied and was unable to take care of her own needs during the time she was under the care and custody of Defendants, while a resident of Defendant FACILITY. Decedent DIGNA suffered from Dementia and Alzheimer's. She was, thus, dependent on Defendants' care staff for all her activities of

daily living including assistance in dressing, grooming, bathing, toileting, medication management, and feeding.

56. Accordingly, Defendants and each of them, had a substantial ongoing caretaking and custodial relationship with Decedent DIGNA, while she was a resident at the Defendants' FACILITY. Decedent DIGNA was dependent on Defendants, and each of them, for all of her custodial and other care needs.

57. Each resident of Defendants' FACILITY is an elder and/or dependent adult as defined by Welfare & Institutions Code §§ 15610.23 and 15610.27, respectively. Defendants knew or should have known that their conduct, as described herein, was directed to one or more elder and/or dependent adults. Because of her age, condition, restricted mobility, and disability, Decedent DIGNA was substantially more vulnerable to the conduct of Defendants than other members of the public.

58. Defendants had a duty to Decedent DIGNA to provide access to care and treatment to prevent the development of wounds, infection/syndrome, pain, malnutrition, and dehydration; to ensure medical care that was needed was actually provided; and to accept and retain only those residents for whom it could provide adequate care, supervision, and assistance. Because Defendant FACILITY accepted and retained Decedent DIGNA as a resident, they owed a duty to Decedent DIGNA to act reasonably in the discharge of their duties and to not willfully or recklessly ignore Decedent DIGNA'S medical care needs or cause unnecessary suffering. Without limiting the foregoing, Defendants owed the following duties to Decedent DIGNA:

a. Duty to identify individualized care needs based on assessment of patient's needs with input from patient and, if necessary, health professionals involved in the care of the patient (Cal. Code Regs., tit. 22, § 72311(a)(1)(A)); 42 C.F.R. §§ 483.10(f), 483.20(b)(1); 42 U.S.C. § 1395i-3(b)(3));

b. Duty to provide care as implemented by individualized written patient care plan indicating the care to be given, objectives to be accomplished, and the professional discipline responsible for each element of care (Cal. Code Regs., tit. 22, § 72311(a)(1)(B); 42 C.F.R. § 483.10(c));

c. Duty to review, evaluate, and update patient care plans as necessary and more often if there is a change of the patient's condition (Cal. Code Regs., tit. 22, § 72311(a)(1)(C));

d. Duty to provide care as implemented by the patient care plan according to the methods indicated (Cal. Code Regs., tit. 22, § 72311(a)(2); 42 U.S.C. § 1395i-3(b)(4));

e. Duty to provide care pursuant to physician's orders in the administration of medication and/or treatment, to provide medication and treatment as prescribed, and prepare a record of the administration of medication and treatment (Cal. Code 17 of Regs., tit. 22, §§ 72313 (a)(1)-(2) and (c));

f. Duty to record nurses' notes that are clear and legible, dated and signed, among other qualifications, including narratives or how a patient responds, eats, drinks, looks, feels, and reacts (Cal. Code Regs., tit. 22, § 72547(a)(5));

g. Duty to provide the resident or responsible party with the opportunity to participate in an immediate and ongoing basis in the total plan of care including identification of medical, nursing, and psychosocial needs and the planning of related services (Cal. Code Regs., tit. 22, § 72527(a)(3); 42 C.F.R. § 483.10(c));

h. Duty to provide care in such a manner and in such an environment by

facility staff to be free from mental and physical abuse and neglect (Cal. Code Regs., tit. 22, § 72527(a)(10); 42 C.F.R. § 483.12);

i.   Duty to provide care in such a manner and in such an environment to prevent formation and progression of pressure ulcers including turning and repositioning; using pressure-reducing devices where indicated; provide care to maintain clean, dry skin free of feces and urine; and carry out physician orders for treatment of ulcers (Cal. Code Regs., tit. 22, § 72315(f); Health & Saf. Code, § 1599.1(b));

j.   Duty to provide adequate personal hygiene, nutrition, and fluids to prevent malnutrition, dehydration, and promote wound healing (Cal. Code of Regs., tit. 22, §§ 72315(d)(g)(h); Health & Saf. Code, § 1599.1(b));

k.   Duty to provide adequate number of qualified personnel to carry out all functions of the facility and to meet patients' needs as well as adequate training and competent supervision (Cal. Code of Regs., tit. 22, §§ 72329 and 72329.1; Health & Saf. Code, § 1599.1(a); 42 C.F.R. §§ 483.35, 483.95).

l.   Duty to treat residents with consideration, respect, and full recognition of dignity (Cal. Code Regs., tit. 22, § 72527(a)(12)); and,

m.   Duty to notify physician of any change of condition and to note all attempts to notify physician in patient's health record (Cal. Code Regs., tit. 22, § 72311(a)(3) and (b)).

59.   In addition, and without limiting the generality of the foregoing, Defendants owed the following duties to Decedent DIGNA and committed elder neglect by: failing to implement policies and procedures to ensure resident care needs are met; failing to provide training on the policies and procedures to ensure resident care needs are met; failing to

ensure physician care is provided; failing to plan a budget whereby staffing levels are adequate; failing to allocate sufficient resources to staff Defendant FACILITY in both quantity and quality caregivers; and failing to comply with state and federal laws and regulations pertaining to SNFs.

60.    Defendants conduct further constitutes neglect as that term is defined in Welfare and Institutions Code § 15610.57 to include "the negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise, including but not limited to:

      a.  Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter.

      b.  Failure to provide medical care for physical and mental health needs;

      c.  Failure to protect from health and safety hazards;

      d.  Failure to prevent malnutrition or dehydration.

61.    Pursuant to California law, Defendants are required to provide an elder, such as Decedent DIGNA, "basic services" including, a duty to continually assess Decedent DIGNA'S condition, a duty to note changes in Decedent DIGNA'S condition, and a duty to immediately notify Decedent DIGNA'S physician and family of changes.  Defendants similarly had a duty to create and update adequate plans of care, and to receive, note, and follow physicians' orders. Defendants had a duty to treat Decedent DIGNA with dignity and respect, and to provide adequate numbers of nursing and other similar staff to assist her. Defendants had a duty to employ adequately trained staff. Yet Defendants failed to provide medical care and custodial care sufficient to meet Decedent DIGNA'S physical and mental health needs and failed to protect her from health and safety hazards, as described in detail herein.

62.    Defendants, knew that Decedent DIGNA was an elder who required assistance to meet her basic needs, yet failed to provide for those needs, even with

knowledge of Decedent DIGNA'S high risk for injury, her dependence on Defendants, and the substantial certainty that Decedent DIGNA would be injured if these needs were not provided for. Defendants' failure to provide Decedent DIGNA with the care, assistance, and monitoring that she required caused her harm.

63. Defendants denied and withheld basic care to Decedent DIGNA despite the knowledge that by doing so, injury was substantially certain to befall her or with conscious disregard of the high probability of such injury. Defendants' denial and withholding of basic care to Decedent DIGNA caused her injuries, needless suffering, and emotional distress. Furthermore, Defendants withheld medical care by failing to assess and reassess Decedent DIGNA'S condition, update individualized care plan(s), and monitor her condition to see whether she was improving, or worsening.

64. Defendants failed to provide Decedent DIGNA with the care and treatment she needed, failed to ensure adequate nutritional and fluid intake, promote and maintain personal hygiene, and monitor and manage her pain levels. Defendants failed to monitor, assess, and reassess Decedent DIGNA'S deteriorating condition and to report her changes of condition to her physician and/or family to arrange for a higher level of care. Thus, there was repeated withholding of care when Defendants failed to implement care plans with adequate monitoring of her intake and output.

65. Defendants failed to meet Decedent DIGNA'S need for care and basic services, to avoid needless suffering, injury, and emotional distress, by making a conscious choice to understaff the nursing home, in both quantity and quality of nursing personnel. The decision to understaff was made at the corporate level by Defendant AG (THE LICENSEE), and Defendant AG FACILITIES OPERATIONS, LLC, and Defendant JACOB WINTNER to increase the profitability of the nursing home, in conscious disregard of patient care needs. Defendants, together with its directors, officers, and managing agents including the Administrator, Director of Nursing, and Medical Director, conceived of and implemented

a plan to increase business profits at the expense of residents like Decedent DIGNA and other Defendant FACILITY residents. Integral to this plan was the practice and pattern of Defendants' staffing its facilities with an insufficient number of care personnel, many of whom were not properly trained nor qualified to care for the elders whose lives were entrusted to them. The understaffing and lack of training was designed to reduce labor costs and to increase profits and resulted in high staff turnover and the physical abuse and neglect of many residents of the facilities and most specifically, Decedent DIGNA. This corporate policy to not maintain sufficient staffing, as required by law, was developed and implemented with the conscious disregard for the likelihood of physical harm and injury to those who it is in the business to protect, including Decedent DIGNA, who did in fact suffer as a direct consequence of the Defendants' proprietary interests, which it placed above that of Decedent DIGNA, and other residents/patients.

66. Defendants had a duty to employ adequate numbers of sufficiently staffed employees to provide minimum services and oversight of residents, policies and procedures to ensure that basic services and oversight are implemented to assure the health and safety of residents, employment and training of staff such that staff is experienced and competent to perform the job duties necessary to assure safety and oversight of residents, accepting, training, and employing staff in a manner that avoids "a revolving door" of crucial managerial employees such that there is little or no continuity and/or an absence of crucial managerial employees at critical times, such as the initial admission of a resident to the FACILITY.

67. Defendants knew or should have known that by understaffing their facilities, in quantity and quality, they were putting Defendant FACILITY residents, including Decedent DIGNA, at risk for known, harmful, life threatening conditions, including dehydration and death. This is because Defendants, and each of them, including the owners, operators, administrators, and directors of nursing understand the direct relationship between staffing and patient outcomes. The higher the staffing ratio, the better

the patient outcome.

68. Defendants, and each of them, knew or should have known that Defendant FACILITY's operation was designed and operated in a manner to circumvent its legal duty to comply with applicable statutes and regulations to maximize profitability. That knowledge was exclusively in the possession of the Defendants. Decedent DIGNA and her family had no such knowledge, nor the opportunity to obtain such knowledge and information. Decedent DIGNA and her family believed that Defendants' business operations were, as represented by the Defendants, properly run in compliance with the law and that the care afforded to its residents was within all State guidelines. They understood that the management and staff at Defendant FACILITY were "experts" and were readily familiar, capable, able, and committed to the care and oversight of residents such as Decedent DIGNA. Such representations were fraudulent. Further, Defendants' conduct was reckless and in conscious disregard of Decedent DIGNA'S rights and safety.

69. Defendants convinced Decedent DIGNA and her family they were able to meet her care needs. Defendants knew those promises and assurances were untrue. Defendants knew the Defendant FACILITY was rated poorly and was in fact a failing facility providing poor care when they made those statements. Defendants knew the Defendant FACILITY was not properly staffed, was not providing proper care, and would not provide proper care to Decedent DIGNA. The purpose of their promises and assurances was to induce Decedent DIGNA to select Defendant FACILITY purely for financial gain. Their statements were false and were part of Defendants' business model of making fraudulent representations to elderly and dependent persons like Decedent DIGNA. This constitutes unfair business practices directed at the elderly.

70. This continual pattern of withholding care and understaffing at Defendant's FACILITY was well known to the Defendants and their officers, directors, and managing agents, Administrator, Director of Nursing, and Medical Director. Upon information and

belief, Defendant FACILITY's Administrator, Director of Nursing, and Medical Director routinely reported up the chain of command to corporate managing agents about what was happening on the floor at the nursing home. Upon information and belief, Defendant FACILITY's Administrator, Director of Nursing, and Medical Director also routinely reported admission, discharge and staffing data, and Defendants directed and controlled the staffing budget by allocating resources, setting staffing minimums and maximums, and directing staff to patient ratios. By law, Defendants were responsible for setting policies and procedures to be implemented in the Defendant FACILITY and provide supervision and oversight of administration and nursing services by and through managers and directors.

71. These corporate managing agents had a duty to direct the nurses and staff yet did not make the necessary changes at Defendant FACILITY, even with knowledge of substandard care, failures to assess, monitor, and respond to changes in resident condition, inadequate custodial care, inadequate hygiene, and inadequate safety measures at the facility. The managing agents of each Defendant knew or should have known of the lack of proper custodial care to its patients, as well as its understaffing, poor training, and the failure to implement care plans based on internal reporting and also the oversight, monitoring, and reporting of the Department of Public Health. Any and all findings of the Department of Public Health regarding care failures at Defendant FACILITY were reported up the corporate chain. Despite each Defendant's conscious knowledge of these conditions, the managing agents of each Defendant did not take appropriate and adequate steps to prevent and correct them, and they did not inform Decedent DIGNA or her family of what they knew about these dangerous conditions.

72. Defendants, and their officers, directors and managing agents of the Defendants' FACILITY, including the Administrator, Director of Nursing, and Medical Director, knew or should have known that the Defendants' FACILITY's operation was designed in a manner so as to maximize profitability by circumventing the legal duty to

assure the health, safety, and oversight of residents such as Decedent DIGNA and, in particular, the duty to hire competent employees, to train those employees and to terminate or discipline employees for misconduct towards the residents, including Decedent DIGNA. As a result, Defendants' and their officers, directors, and managing agents, including the Administrator, Director of Nursing, and Medical Director, had knowledge of, ratified and/or otherwise authorized all of the acts or omissions, which caused the injuries to Decedent DIGNA.

73. LVNs are per se "unfit" to perform the functions of an RN, just as an RN is per se "unfit" to perform the functions of a medical doctor. Here, Defendants authorized and ratified the use of LVNs to perform assessments that they were not licensed or qualified to perform. As a direct and proximate result of using unfit LVNs to perform assessments, the LVN-based assessments and care plans done for Decedent DIGNA were incomplete and inadequate and resulted in Decedent DIGNA not getting the interventions she needed to prevent her becoming dehydrated, malnourished, developing respiratory infection/syndrome, and dying.

74. As a proximate result of the abuse and neglect of Decedent DIGNA by Defendant LVNs, and each of them, Decedent DIGNA died on May 2, 2020.

75. As a proximate result of the abuse and neglect of Decedent DIGNA by Defendants and each of them, she was caused to incur medical expenses and other related expenses, all to her special damages in a sum to be established.

76. As a proximate result of the abuse and neglect of Decedent DIGNA by Defendants, and each of them, she suffered fear, anxiety, humiliation, physical pain and discomfort, and emotional distress, all to her general damages in a sum to be established.

77. By the conduct, acts and omissions of Defendants, and each of them, as alleged above, they are guilty of recklessness, fraud, oppression, and/or malice. The specific facts set forth above show a disregard of the high probability that Decedent DIGNA

would be injured. In addition to special damages, Plaintiff is therefore entitled to an award of the reasonable attorney's fees and costs incurred in prosecuting this case as well as Decedent DIGNA'S pain and suffering and punitive damages pursuant to Welfare & Institutions Code § 15657 and Civil Code § 3294.

**SECOND CAUSE OF ACTION**

**VIOLATION OF PATIENT RIGHTS**

**[Health & Safety Code § 1430(b)]**

**(Against Defendants AG REDLANDS LLC dba HIGHLAND CARE CENTER OF REDLANDS and DOES 1-25)**

78. Plaintiff incorporates by reference Paragraphs 1 through 77 of this Complaint as though fully set forth.

79. The acts and omissions of Defendants alleged above constitute violations of patients' rights within the meaning of Health and Safety Code § 1430(b). This statute allows a current or former resident to pursue damages, attorney's fees, and an injunction for violations of patients' rights set forth in Title 22 of the California Code of Regulations § 72527 and other state and federal laws and regulations.

80. Here, Defendants' conduct as described in the foregoing sections violated several of Decedent DIGNA'S statutory rights, including but not limited to:

a. Right to be treated with consideration, respect, and full recognition of dignity (Cal. Code Regs., tit. 22, § 72527(a)(12));

b. Right to have individualized individual care needs identified based on assessment of patient's needs with input from patient and, if necessary, health professionals involved in the care of the patient (Cal. Code Regs., tit. 22, § 72311(a)(1)(A)); 42 C.F.R. §§ 19 483.10(f), 483.20(b)(1); 42 U.S.C. § 1395i-3(b)(3));

c. Right to receive care as implemented by individualized written patient

care plan indicating the care to be given, objectives to be accomplished, and the professional discipline responsible for each element of care (Cal. Code Regs., tit. 22, § 72311(a)(1)(B); 42 C.F.R. § 483.10(c));

d. Right to have patient care plans reviewed, evaluated, and updated as necessary and more often if there is a change of the patient's condition (Cal. Code Regs., tit. 22, § 26 72311(a)(1)(C));

e. Right to receive care as implemented by the patient care plan according to the methods indicated (Cal. Code Regs., tit. 22, § 72311(a)(2); 42 U.S.C. § 1395i-3(b)(4));

f. Right to receive care pursuant to physician's orders in the administration of medication and/or treatment, to have medication and treatment as prescribed, and for a record of the administration of medication and treatment prepared (Cal. Code of Regs., tit. 22, §§ 72313 (a)(1)-(2) and (c));

g. Right to have a record of nurses' notes that are clear and legible, dated and signed, among other qualifications, including narratives or how a patient responds, eats, drinks, looks, feels, and reacts (Cal. Code Regs., tit. 22, § 72547(a)(5));

h. Right for the resident or responsible party to have the opportunity to participate in an immediate and ongoing basis in the total plan of care including identification of medical, nursing, and psychosocial needs and the planning of related services (Cal. Code Regs., tit. 11 22, § 72527(a)(3); 42 C.F.R. § 483.10(c));

i. Right to have physician notified of any change of condition and to have all attempts to notify physician noted in patient's health record (Cal. Code Regs., tit. 22, § 72311(a)(3) and (b));

j. Right to receive pharmaceutical and physical therapy services for effective pain management (Cal. Code Regs., tit. 22, §§ 72355, 72403(b)(3));

k. Right to receive care in such a manner and in such an environment by facility staff to befree from mental and physical abuse and neglect (Cal. Code Regs., tit. 22, § 72527(a)(10); 42 C.F.R. § 483.12);

l. Duty to provide adequate number of qualified personnel to carry out all functions of the facility and to meet patients' needs as well as adequate training and competent supervision (Cal. Code of Regs., tit. 22, §§ 72329 and 72329.1; Health & Saf. Code, § 1599.1(a); 42 C.F.R. §§ 483.35, 483.95).

81. Defendants violated the above-referenced patient's rights when they failed to provide appropriate services to prevent serious injury to Decedent DIGNA.

82. Plaintiff is entitled to attorney's fees and in addition to other remedies set forth in Health and Safety Code § 1430(b).

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

**(Against Defendants AG REDLANDS LLC dba HIGHLAND CARE CENTER OF REDLANDS, AG FACILITIES OPERATIONS, LLC, JACOB WINTNER and DOES 1-25)**

83. Plaintiff incorporates by reference Paragraphs 1 through 82 of this Complaint as though fully set forth.

84. At all times herein mentioned, Defendants had a duty to exercise reasonable and ordinary care in providing custodial care services to Decedent DIGNA and/or in providing health care services to Decedent DIGNA.

85. At the above-mentioned times and place, Defendants, by their respective acts or omissions, were careless and breached their respective aforementioned duty owed to Decedent DIGNA by: negligently and carelessly failing to exercise reasonable and

ordinary care to provide custodial care services to Decedent DIGNA; negligently and carelessly failing to exercise reasonable and ordinary care to provide health care services to Decedent DIGNA; negligently and carelessly failing to adequately supervise and/or monitor Decedent DIGNA; negligently and carelessly failing to hire, train and supervise; negligently and carelessly failing to exercise reasonable and ordinary care to provide custodial care services to Decedent DIGNA; negligently and carelessly failing to be adequately staffed to appropriately care for and treat Decedent DIGNA; negligently and carelessly failing to implement appropriate measure and interventions to ensure that Defendant FACILITY, as a SNF, was adequately staffed to appropriately care for and treat Decedent DIGNA; negligently and carelessly failing to take appropriate measures to prevent injury to Decedent DIGNA; negligently and carelessly failing to adequately assess the care needs of Decedent DIGNA; negligently and carelessly failing to adequately implement appropriate interventions to address the care needs of Decedent DIGNA; negligently and carelessly failing to have appropriate policies and procedures in place and for failing to follow appropriate policies and procedures; and/or negligently and carelessly failing to otherwise care for and treat Decedent DIGNA consistent with the standard of care, which upon information and belief, will be disclosed through discovery in the course of this litigation.

86. As a direct and proximate result of these tortious acts, omissions, and/or conduct of Defendants, Plaintiffs were damaged, injured, and harmed, all of which have caused Plaintiffs great mental, physical and emotional distress, pain and suffering, all to Plaintiffs' damage in a sum to be determined according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

## WRONGFUL DEATH

**(Against Defendants AG REDLANDS LLC dba HIGHLAND CARE CENTER OF REDLANDS, AG FACILITIES OPERATIONS, LLC, JACOB WINTNER and DOES 1-25)**

87. Plaintiff incorporates by reference Paragraphs 1 through 86 of this Complaint

as though fully set forth.

88. Plaintiff DANIEL is the surviving heir and natural child of Decedent DIGNA.

89. As a proximate result of the conduct alleged above, perpetrated by Defendants, Decedent DIGNA died on May 2, 2020.

90. Prior to the death of Decedent DIGNA, Plaintiff DANIEL enjoyed the love, society, comfort, and attention of his mother.

91. As a proximate result of the wrongful act of Defendants, as alleged herein, which caused the death of Decedent DIGNA, Plaintiff DANIEL sustained pecuniary loss of the love, comfort, companionship, solace, society, training, guidance, and attention of Decedent DIGNA, in a sum according to proof at trial.

## RELIEF REQUESTED / PRAYER

1. On the First Cause of Action:
   a. For compensatory damages in an amount in excess of the minimum jurisdiction of this court to be ascertained at the time of trial; and
   b. For special damages including past hospital, medical, professional, and incidental expenses, according to proof; and
   c. For interest on any compensatory damages;
   d. For attorney's fees and costs pursuant to Welfare & Institutions Code § 15657 and according to proof; and
   e. For punitive and/or exemplary damages pursuant to Welfare & Institutions Code § 15657 and Civil Code § 3294; and
   f. For treble damages pursuant to Civil Code § 3345;
2. On the Second Cause of Action:
   a. For statutory damages according to proof pursuant to Health & Safety Code section 1430(b); and
   b. For attorney's fees and costs pursuant to Health & Safety Code section

1430(b);

3. On the Third and Fourth Causes of Action:

a. For compensatory damages in an amount in excess of the minimum jurisdiction of this court to be ascertained at the time of trial; and

b. For special damages including funeral and burial expenses, medical and incidental expenses according to proof; and

c. For interest on any compensatory damages;

4. On all counts

a. For costs of suit; and

b. Whatever further relief the court may find just and proper.

DATED: June 4, 2021

THE BARNES FIRM, LC

By:

Christian R. Oliver
Attorneys for Plaintiffs

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury.

DATED: June 4, 2021

THE BARNES FIRM, LC

By: ______________________
Christian R. Oliver
Attorneys for Plaintiffs

ALLEN R. OGHASSABIAN, SBN 292653
CHRISTIAN R. OLIVER, SBN 313192
THE BARNES FIRM, LC
655 W. Broadway, Ste 940
San Diego, California 92101
Tel: 800.800.0000 Fax: 888.800-7050
Email: allen.oghassabian@thebarnesfirm.com
Email: christian.oliver@thebarnesfirm.com

Attorneys for Plaintiffs

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT
JUN 04 2021
BY NATHAN JOHNSON, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

DIGNA BARREIRO, deceased, by and through her personal legal representative and successor in interest, DANIEL BATLLE; and DANIEL BATLLE, individually,

Plaintiffs,

v.

AG REDLANDS LLC dba HIGHLAND CARE CENTER OF REDLANDS, a California Skilled Nursing Facility; AG FACILITIES OPERATIONS, LLC, a Limited Liability Company; JACOB WINTNER, an individual; DOES 1-25, inclusive,

Defendants,

-and-

MARLENE BATLLE, an individual,

Nominal Defendant

Case No.: CIV SB 2116544

PETITION OF DANIEL BATLLE TO BRING ACTION IN NAME OF DIGNA BARREIRO, DECEASED

TO THE HONORABLE COURT AND ALL INTERESTED PARTIES:

COMES NOW DANIEL BATLLE, in his capacity as heir at law and successor in interest to decedent DIGNA BARREIRO hereby petitions this respected Court, pursuant to

*California Welfare & Institutions Code §15657.3(d)*, to allow him to bring the above entitled elder abuse action against defendants, and all of them, as personal/legal representative for, and in the name of, decedent DIGNA BARREIRO.

Attached hereto as EXHIBIT "A" is a true and correct copy of DANIEL BATLLE'S Declaration in compliance with *California Code of Civil Procedure §377.32* which demonstrates that DANIEL BATLLE has standing to bring this action as heir at law and successor in interest to decedent DIGNA BARREIRO pursuant to the provisions of *California Welfare & Institutions Code §15657.3(d)*.

Based upon the foregoing, DANIEL BATLLE respectfully requests that this Court grant his Petition and allow him to bring the above entitled action against the defendants, and all of them, as personal/legal representative for, and in the name of, decedent DIGNA BARREIRO.

Respectfully submitted.

DATED: June 4, 2021

THE BARNES FIRM, LC

By: ______________________
Christian R. Oliver, Esquire
Attorney for Plaintiffs

# EXHIBIT A

ALLEN R. OGHASSABIAN, SBN 292653
CHRISTIAN R. OLIVER, SBN 313192
THE BARNES FIRM, LC
655 W. Broadway, Ste 940
San Diego, California 92101
Tel: 800.800.0000 Fax: 888.800-7050
Email: allen.oghassabian@thebarnesfirm.com
Email: christian.oliver@thebarnesfirm.com

Attorneys for Plaintiffs

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

| | |
|---|---|
| DIGNA BARREIRO, deceased, by and through her personal legal representative and successor in interest, DANIEL BATLLE; and DANIEL BATLLE, individually,<br><br>Plaintiffs,<br>v.<br><br>AG REDLANDS LLC dba HIGHLAND CARE CENTER OF REDLANDS, a California Skilled Nursing Facility; AG FACILITIES OPERATIONS LLC, a California company; JACOB WINTNER, an individual; DOES 1-25, inclusive,<br><br>Defendants,<br><br>-and-<br><br>MARLENE BATLLE, an individual,<br><br>Nominal Defendant | **DECLARATION OF PLAINTIFF, DANIEL BATLLE** |

I, DANIEL BATLLE, declare as follows:

1. I am the successor in interest and a beneficiary of the estate of my deceased mother, DIGNA BARREIRO, and make the following declaration based upon my own personal knowledge, pursuant to California Code of Civil Procedure section 377.32 and under penalty of perjury under the laws of the State of California and of the United States of America;

2. Pursuant to California Code of Civil Procedure section 377.32(a)(1), I identify the decedent's name as DIGNA BARREIRO.

3. I have personal knowledge of all matters herein set forth and if called as a witness could and would testify competently thereto.

4. I live in the County of San Bernardino, specifically at 13003 Ysidro Lane, Victorville, CA 92394.

5. Pursuant to California Code of Civil Procedure section 377.32(1)(2), I identify the date and place of decedent's death as May 2, 2020 in the County of San Bernardino, California.

6. Pursuant to California Code of Civil Procedure section 377.32(a)(3), I declare as follows: No proceeding is now pending in California for administration of the decedent's estate.

7. Pursuant to California Code of Civil Procedure section 377.32(a)(4), I declare that the decedent's estate was not administered.

8. I have been informed and thereon believe that prior to the death of DIGNA BARREIRO, she possessed rightful legal claims against defendants named herein for various claims, including specifically claims brought under the Elder Abuse and Dependent Adult Civil Protection Act (EADACPA) found at California Welfare & Institutions Code §15600 et seq. I have further been informed and thereon believe that these claims survive DIGNA BARREIRO under California's EADACPA found at California Welfare & Institutions Code §15600 et seq.

9. Pursuant to California Code of Civil Procedure section 377.32(a)(5)(A), I declare as follows: The affiant or declarant is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interests in the action or proceeding.

10. Pursuant to California Code of Civil Procedure section 377.32(a)(6), I declare as follows: No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

11. Pursuant to California Code of Civil Procedure section 377.32(a)(7), I declare as follows: The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

12. Pursuant to California Code of Civil Procedure section 377.32(c), I declare that I have attached a true and accurate certified copy of the decedent's death certificate to this declaration.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California and of the United States of America. Executed this 14th day of May, 2021, at Victorville, California

DANIEL BATLLE
Plaintiff

STATE OF CALIFORNIA

CERTIFICATION OF VITAL RECORD

# COUNTY of SAN BERNARDINO

DEPARTMENT OF PUBLIC HEALTH

351 N. MT. VIEW AVENUE, SAN BERNARDINO, CALIFORNIA 92415-0010

CERTIFICATE OF DEATH

ODNA | | BARREIRO

09/14/1941 | 78 | | F

CUBA | 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 | [ ] [X] [ ] | WIDOWED | 05/02/2020 | 1120

HS GRADUATE | [X] CUBAN | CUBAN

HOSTESS | RESTAURANT | UNK

700 E. HIGHLAND AVE

REDLANDS | SAN BERNARDINO | 92374 | 4 | DA

DANIEL A. BATLLE, SON | 15003 YSIDRO LN, VICTORVILLE, CA 92394

ROBERTO | BARREIRO | CUBA

MERCEDES | CANO | CUBA

05/12/2020 | RES OF DANIEL A. BATLLE 15003 YSIDRO LN, VICTORVILLE, CA 92394

CR/RES | NOT EMBALMED

MARK B SHAW FUNERAL DIRECTORS AARON CREMATION | FD436 | ERIN GUSTAFSON, MD, MPH | 05/12/2020

REDLANDS COMMUNITY HOSPITAL | [X]

SAN BERNARDINO | 350 TERRACINA BLVD | REDLANDS

(A) ACUTE RESPIRATORY FAILURE | DAYS | [X] | 2020[illegible]

(B) SEPSIS | DAYS | [X]

(C) PNEUMONIA | DAYS | [X]

(D) COVID-19 | DAYS

DEMENTIA, PERIPHERAL ARTERIAL DISEASE

NO | [X]

JOHN KEE-HYEUN LEE M.D. | A119164 | 05/05/2020

04/29/2020 | 05/02/2020 | JOHN KEE-HYEUN LEE M.D. 350 TERRACINA BLVD, REDLANDS, CA 92373

CERTIFIED COPY OF VITAL RECORD

STATE OF CALIFORNIA } SS
COUNTY OF SAN BERNARDINO

DATE ISSUED

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL RECORDS SECTION, SAN BERNARDINO DEPARTMENT OF PUBLIC HEALTH.

MAY 2 1 2020

*002813477*

This copy not valid unless prepared on engraved border displaying the date, seal and signature of Registrar.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

DIGNA BARREIRO, deceased, et al. Case No.: CIV SB 2 1 1 6 5 4 4

vs. **CERTIFICATE OF ASSIGNMENT**

AG REDLANDS LLC et al.

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the San Bernardino District of the Superior Court under Rule131 and General Order of this court for the checked reason:

☒ General ☐ Collection

| | Nature of Action | Ground |
|---|---|---|
| ☐ | 1. Adoption | Petitioner resides within the district |
| ☐ | 2. Conservator | Petitioner or conservatee resides within the district. |
| ☐ | 3. Contract | Performance in the district is expressly provided for. |
| ☐ | 4. Equity | The cause of action arose within the district. |
| ☐ | 5. Eminent Domain | The property is located within the district. |
| ☐ | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 9. Mandate | The defendant functions wholly within the district. |
| ☐ | 10. Name Change | The petitioner resides within the district. |
| ☒ | 11. Personal Injury | The injury occurred within the district. |
| ☐ | 12. Personal Property | The property is located within the district. |
| ☐ | 13. Probate | Decedent resided or resides within or had property within the district. |
| ☐ | 14. Prohibition | The defendant functions wholly within the district. |
| ☐ | 15. Review | The defendant functions wholly within the district. |
| ☐ | 16. Title to Real Property | The property is located within the district. |
| ☐ | 17. Transferred Action | The lower court is located within the district. |
| ☐ | 18. Unlawful Detainer | The property is located within the district. |
| ☐ | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☐ | 20. Other ______ | ______ |
| ☐ | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designed district is:

HIGHLAND CARE CENTER OF REDLANDS — 700 E. Highland Avenue
NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR — ADDRESS

Redlands — CA — 92374
CITY — STATE — ZIP CODE

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on June 4, 2021 at San Diego, California.

Signature of Attorney/Party



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

San Bernardino District
247 West 3rd St
San Bernardino CA 92415
www.sb-court.org
909-708-8678

| Barreiro et al -v- Ag Redlands LLCet al | |
|---|---|
| **NOTICE OF TRIAL SETTING CONFERENCE and NOTICE OF CASE ASSIGNMENT** | Case Number CIVSB2116544 |

THE BARNES FIRM, LC
655 W Broadway
STE 940
San Diego CA 92101

This case has been assigned to: Lynn Poncin in Department S28 - SBJC for all purposes.

Notice is hereby given that the above-entitled case has been set for Trial Setting Conference on:

Hearing Date: 12/13/2021 at 9:00 AM in Department S28 - SBJC

The Trial Setting Conference will be held in chambers without the appearance of the parties – except for good cause shown. (see Emergency Local Rule 411.1).

Parties shall file and serve no later than 15 days prior to the trial setting conference the mandatory Initial Trial Setting Conference Statement form (local form #13-09001-360) included with this notice. Prior to the date of the initial trial setting conference, the court may entertain a written stipulation by all appearing parties to continue the initial trial setting conference if filed at least 30 days prior to the conference.

Date: 6/16/2021

Nancy CS Eberhardt, Court Executive Officer

By: ______________________
Nate Johnson, Deputy Clerk

---

CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San Bernardino at the above-listed address. I am not a party to this action and on the date and place shown below, I served a copy of the above-listed notice by:

☐ Enclosed in a sealed envelope mailed to the interested party addressed above for collection and mailing this date, following standard Court practices.

☒ Enclosed in a sealed envelope, first class postage prepaid in the U.S. mail at the location shown above, mailed to the interested party and addressed as shown above or as shown on the attached listing.

☐ A copy of this notice was given to the filing party at the counter.

☐ A copy of this notice was placed in the bin located at this office and identified as the location for the above law firm's collection of file-stamped documents.

Date of Mailing: 6/16/2021

I declare under penalty of perjury that the forgoing is true and correct. Executed on 6/16/2021 at San Bernardino, CA.

By: ______________________
Nate Johnson, Deputy Clerk